## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Neuralpulse Ltd., and LuminaThrive LLC

        *Plaintiffs*,

      v.

Water Pik, Inc,

        *Defendant*.

**CASE NO.** 1:25-cv-1479

**JURY TRIAL DEMAND**

---

## COMPLAINT

---

This is an action brought under the Declaratory Judgment Act by Plaintiffs Neuralpulse Ltd., and LuminaThrive LLC (collectively as "Plaintiffs") against Defendant Water Pik, Inc ("Defendant"), claiming for patent non-infringement of certain Water Dental Flosser that sold by Plaintiffs, as defined herein ("Water Dental Flosser"), and invalidity against U.S. Patent No. 9,642,677 ("the '677 Patent"). Upon actual knowledge with respect to itself and its acts, and upon information and belief as to all other matters, Plaintiffs allege as follows:

### NATURE OF THE ACTION

1.    This court has original jurisdiction over the subject matter of this action pursuant to the Patent Act, 35 U.S.C.§§ 101 *et seq*., pursuant to 28 U.S.C.§§ 1331, 1332(a) and (c), 1338(a), and pursuant to the Declaratory Judgment Act, 28 U.S.C.§§ 2201 and 2202. By submitting infringement reports to Amazon, Defendant has placed Plaintiffs in a precarious position, exposing them to the imminent and real threat of an infringement lawsuit under the '677 Patent.

///

1

## **THE PARTIES**

1.      Plaintiff, Neuralpulse Ltd. ("Neuralpulse") is a company organized and existing under the laws of New York, with the registered address located at 418 Broadway STE 4590, ALBANY, NY 12207, United States.

2.      Plaintiff, LuminaThrive LLC ("LuminaThrive") is a company organized and existing under the laws of Texas, with the registered address located at 5900 Balcones Drive #13245, AUSTIN, TX 78731, United States.

3.      Defendant, Water Pik, Inc is a company organized and existing under the laws of Colorado, with the principal office address located at 1730 East Prospect Rd Fort Collins, CO 80553, United States.

4.      On information and belief, Defendant is the applicant and assignee of the '677 Patent. A true copy of the '677 Patent is attached hereto as Exhibit A.

## **JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 2201, 2202, 1331, 1338(a) because this action arises under the laws of the United States, in particular the Patent Act of the United States, 35 U.S.C. § 100 *et seq*.

6.      An actual case or controversy exists between the parties to this action. Defendant's actions have placed Plaintiffs in the precarious position of the imminent and real threat of an infringement lawsuit through the enforcement of the '677 Patent through submitting infringement report to Amazon against Plaintiffs. Defendant's actions thereby give rise to an actual controversy under 28 U.S.C. §§ 2201 et. seq.

7.      This Court has personal jurisdiction over Defendant as it is a resident of Colorado.

8.    Venue is proper in this Court pursuant to 28 U.S.C.§ 1391(b) and (c) and 1400(b) because Defendant resides in this judicial district.

## FACTUAL BACKGROUND

9.    Over the past twenty years, online retailing has revolutionized how companies reach American consumers. The marketplaces combined with dramatically increased transport speed and improved logistics networks allow even relatively small companies to compete across thousands of miles. These developments have generally increased competition and lowered prices.

10.    The web domain "Amazon.com" hosts the Amazon Marketplace and its millions of product listings; it is U.S.-specific and targets American consumers. For an online retailer to effectively compete in the United States, it must sell on the Amazon Marketplace. According to bigcommerce.com, "Each month more than 197 million people around the world get on their devices and visit Amazon.com. That's more than the entire population of Russia. In 2018, Amazon's share of the US e-commerce market hit 49% . . . that is more than Amazon's top three competitors combined, with eBay coming in at 6.6%, Apple at 3% and Walmart at 3.7%."

11.    Nine out of ten American consumers use Amazon to price check products they find elsewhere, and roughly 95 million people have Amazon Prime memberships in the United States facing the considerable challenges of managing this sprawling hive of commercial activity. Amazon, Inc. established intellectual property complaint and enforcement systems for Amazon.com primarily designed to protect itself from liability for contributing to infringement. Means that Amazon, Inc. provides, among others, include filing an Amazon Complaint by using its "Amazon's Report Infringement Form." If the patent owner submit infringement report to Amazon, Amazon may delist the sellers' listings and remove their Amazon.com selling privileges.

12.    Neuralpulse sells Water Dental Flosser on Amazon under the store name "Resource's Team," which has received 99% positive in last 12 months, and has earned a lifetime rating of 4.8 out of 5 stars.

13.    LuminaThrive sells Water Dental Flosser on Amazon under the store name "Happy Source," which has received 99% positive in last 12 months, and has earned a lifetime rating of 4.8 out of 5 stars.

14.    Plaintiffs' Water Dental Flosser has achieved a strong market presence on Amazon.com and currently holds the No. 1 best-seller ranking in the Power Flossers & Irrigator Accessories category, as shown below.



15.    On May 7, 2025, Plaintiffs received emails from Amazon indicating that Amazon had received an infringement report against their Water Dental Flosser (ASIN: B0D5RFBB7M), concerning the '677 Patent. A true and correct copy of the emails from Amazon is attached hereto

as Exhibit B. The emails also provide the rights owners' contact information as: Paul Dunlap, info@trendakip.com.

16.    Amazon not only constantly monitors and scores each seller's account performance including how many infringement complaints have been filed against the seller, but Amazon also reserves the right to deactivate selling accounts without advance warning.

17.    The Amazon marketplace constitutes Plaintiffs' primary sales channel into the United States.

18.    To remain competitive in the United States market, Plaintiffs need their products listed in the Amazon Marketplace.

19.    Defendant's actions have harmed and continue to harm Plaintiffs' Amazon health rating and they are facing imminent and real threat of the infringement reports and their listings may be removed by Amazon at any time.

20.    In addition to the direct effects of monetary losses, delisting of products with immediately result in lost sales numbers, product reviews, and product ratings, which are all important factors in determining their Amazon ranking. Amazon ranking is in turn important to product visibility in consumer searches and to Amazon's award of the "Amazon Choice" Badge or the "Amazon Bestseller" designations which create a significant sales boost.

## U.S. PATENT NO. 9,642,677

21.    The face of the '677 Patent lists Defendant as the applicant assignee. *See* Exhibit A. The '677 Patent was filed on March 14, 2013, and was issued on May 9, 2017. *Id*.

22.    The '677 Patent is entitled "ORAL IRRIGATOR WITH MASSAGE MODE" and generally discloses "[a]n irrigating device, such as an oral irrigator or a nasal irrigator." Exhibit A, at Abstract.

23.    The '677 Patent has four independent claims and twenty-three dependent claims.

**<u>COUNT I</u>**
**(Declaration of Non-infringement of U.S. Patent, No. 9,642,677)**

24.    Plaintiffs incorporate by reference the allegations set forth above in this Complaint as if fully set forth herein.

25.    An actual, continuing and justiciable controversy exists between Plaintiffs and Defendant concerning the non-infringement of the '677 Patent by the Water Dental Flosser, as evidenced by Defendant's allegations of infringement on Amazon, as set forth above.

26.    Plaintiffs' Water Dental Flosser does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any of the presumably valid claims of the '677 Patent.

27.    For example, the Claim 1 of the '677 Patent requests requires a control system capable of providing two distinct types of electrical signals to a motor: one signal characterized by a "constant voltage" for a normal operational mode, and another signal characterized by "a voltage varying in at least one of magnitude or frequency" for a different (massage) operational mode. *See* Exhibit A, 18: 45-58. The ordinary meaning of "constant voltage" in electrical engineering is a voltage that maintains a steady, direct current (DC) level over time, without intentional periodic interruption or variation as part of the control signal itself.

28.    Plaintiffs' Water Dental Flosser operates fundamentally differently. All four (4) of the Plaintiffs' Water Dental Flosser's operating modes (Low, Medium, High, Pulse), including its normal cleaning modes and its massage mode, are driven by fixed-peak-voltage, fixed-frequency Pulse Width Modulated (PWM) signals where only the duty cycle ($\geq$50%) is varied to achieve different effects.











29.    And crucially, the Water Dental Flosser does not, and is not designed to, supply a "constant voltage"—in the sense of a continuous, uninterrupted DC voltage—to its motor in any of its operational modes. Furthermore, the output pressure profile of the Water Dental Flosser, even in its normal cleaning modes, does not exhibit characteristics like those depicted in Figure 9A of the '677 patent, which the patent attributes to its "constant voltage" cleaning mode.

30.    Plaintiffs' Water Dental Flosser does not meet the limitations of the Claim 1 in terms of its literal meaning. The Water Dental Flosser processing element does not supply a "constant voltage" (construed as a steady, non-pulsed DC voltage) to the motor for any of its normal operating modes. All normal modes of Plaintiffs' Water Dental Flosser utilize PWM signals, which are inherently pulsed and not "constant voltage."

31.    Consequently, the processing element of the Water Dental Flosser is not configured to provide "either" the claimed "first control signal (constant voltage)" or the claimed "second control signal (varying voltage)." Since it lacks the capability to provide the specifically claimed "constant voltage" signal as one of the selectable options, it does not meet this "either...or" structural and functional capability. The output water pressure distribution of the Water Dental Flosser in its normal modes, being driven by PWM, will differ from the characteristics shown in

Figure 9A of the '677 Patent, which is explicitly attributed to a "constant voltage" signal driving a reciprocating pump.

32.    Plaintiffs' Water Dental Flosser also does not infringe the '677 Patent under doctrine of equivalent. The Water Dental Flosser's use of fixed-duty-cycle PWM signals for its normal operating modes is not equivalent to the asserted claims' requirement of a "constant voltage" signal for one of the operational modes. The patentee of the '677 Patent narrowed the scope of its claims during prosecution by specifically defining one of its control signals as providing a "constant voltage" to distinguish from prior art that did not teach such a specific dual-mode control with this particular type of signal. This amendment was clearly made for reasons related to patentability, as evidenced by the Examiner's subsequent allowance based on this distinction. The patentee surrendered all equivalents between the original broader scope (which might have arguably covered various "normal mode" signals) and the amended claim requiring "constant voltage." A fixed-duty-cycle PWM signal, being an inherently pulsed (non-constant instantaneous) voltage, falls within this surrendered territory. The patentee cannot demonstrate that the equivalent (fixed-duty-cycle PWM for a "constant voltage" normal mode) was unforeseeable at the time of amendment, PWM is a well-known motor control technique. The amendment specifically to "constant voltage" was directly related to defining the nature of the signal for the normal mode in contrast to varying signals. Moreover, this variable voltage model, such as PWM signal itself, has been given in the specification, such as in Figure 8. The patentee already knew the two essentially different voltage signals, the PWM signal (Figure 8) and the constant voltage, when filling the patent application. Therefore, the patentee is estopped from asserting that the Water Dental Flosser's fixed-duty-cycle PWM signals (used in its normal modes) are equivalent to the "constant voltage" limitation in the four Independent Claims of the '677 Patent.

33.    Under the function–way–result test, the Water Dental Flosser is not even remotely equivalent to the "constant-voltage" embodiment claimed in the '677 Patent. In the patented device the constant-voltage signal is intended to continuously drive the motor at full speed, producing an uninterrupted, high-frequency micro-pulse stream for ordinary cleaning. By contrast, every one of the four operating levels in the Water Dental Flosser is generated by a duty-controlled PWM signal with a duty cycle of at least 50 %, so the motor is driven in a periodic on/off fashion rather than continuously.

34.    The patent accomplishes its constant-voltage mode through a direct, steady DC supply—no MOSFET gating, no switching losses. The Water Dental Flosser, however, necessarily relies on high-frequency MOSFET switching to chop the supply and create a fixed-frequency PWM waveform whose duty cycle, not its peak amplitude, determines output intensity. The two approaches exploit fundamentally different power-conversion techniques and electromagnetic behaviors.

35.    Because the patented constant-voltage mode never interrupts the pump, the tip delivers a uniform pressure band like that illustrated in Fig. 9A of the patent. With the Water Dental Flosser's ≥ 50 % duty PWM, the motor torque oscillates and the average flow rate undulates; the pressure trace lacks the flat-top plateau of Fig. 9A and never reproduces that "continuous-clean" profile.



FIG. 9A

36.    In short, the Water Dental Flosser (i) omits the claimed constant-voltage control mode altogether, (ii) employs a distinctly different electrical method (high-duty PWM) to energize the motor, and (iii) achieves a different pressure outcome at the tip, these substantial differences in function, way, and result preclude any finding of equivalence.

37.    Accordingly, any differences between the Water Dental Flosser and Claim 1 of the '677 Patent are substantive, and therefore Water Dental Flosser does not infringe, whether under the literal scope or under the doctrine of equivalents.

38.    The other three independent claims, 6, 16 and 20, are substantially similar to Claim 1, which also requires a constant voltage control mode, and the Water Dental Flosser lacks such a constant voltage control mode (under both literal and doctrine of equivalents analyses). Therefore, the Water Dental Flosser does not infringe any independent claims of the '677 Patent.

39.    Likewise, since the independent claims of the '677 Patent are not infringed, neither are dependent claims. *Wahpeton Canvas Co. v. Frontier, Inc*., 870 F.2d 1546, 1552 n.9, 1553 (Fed. Cir. 1989) (a dependent claim cannot be infringed if any claim from which it depends is not infringed).

40.    Defendant's baseless infringement report alleged to Amazon has resulted in imminent and real threat of an infringement lawsuit.

41.    The circumstances show that there is an actual, present, substantial, and justiciable controversy between Plaintiffs and Defendant, which have adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

42.    Pursuant to the Declaratory Judgment Act, Plaintiffs request a judicial determination and declaration that the Water Dental Flosser do not infringe, either directly or

indirectly, literally or under the doctrine of equivalents, any presumably valid claim of the '677 Patent.

## COUNT II
### (Declaration of Invalidity of U.S. Patent, No. 9,642,677)

43.    Plaintiffs incorporate by reference the allegations set forth above in this Complaint as if fully set forth herein.

44.    An actual, continuing and justiciable controversy exists between Plaintiffs and Defendant concerning the validity of the '677 Patent, as evidenced by Defendant's allegations of infringement on Amazon, as set forth above.

45.    Claims of the '677 Patent are invalid under 35 U.S.C. §§ 102, 103 and/or 112 at least in light of the prior art cited herein.

46.    U.S. Patent Application Publication No. 2012/0189976 A1, entitled "ORAL CARE DEVICES AND SYSTEMS" to McDonough et al. ("McDonough"), by itself or in combination with other prior art, anticipates and/or renders obvious one or more claims of the '677 Patent. McDonough has a priority date of January 25, 2011, based on U.S. Provisional Application No. 61/435,862, and was filed on January 19, 2012. McDonough discloses an oral care device utilizing a motor (e.g., a linear motor) and a control system for said motor. McDonough discloses the use of a control system that can manage motor operation, potentially based on user input or sensor feedback, and the mention of using techniques such as Pulse Width Modulation (PWM) for purposes like managing power and optimizing operational characteristics such as frequency or speed of a linear motor driving a piston. McDonough further discloses a logic system based on user input for controlling piston movement, suggesting selectable operational aspects. A copy of the McDonough is attached Exhibit C.

47.    U.S. Patent No. 6,932,779 B2, entitled "METHOD OF CONTROLLING MASSAGING MACHINE" to Kasai ("Kasai"), by itself or in combination with other prior art, anticipates and/or renders obvious one or more claims of the '677 Patent. Kasai was filed in the U.S. on June 27, 2002. Kasai discloses a method of controlling a massaging machine by applying a "pulsed driving signal" to a motor to achieve an intermittent activation, thereby creating a massaging effect (e.g., patting or vibration) designed to be more pleasant than continuous operation. Kasai explicitly teaches that this pulsed driving signal can be achieved using Pulse Width Modulation (PWM) with specific, user-settable parameters for frequency and duty ratio (e.g., 2.5 Hz, 20% duty ratio). Critically, Kasai contrasts its pulsed voltage method with the conventional method of applying a "constant voltage continuously," thereby establishing the concept of two distinct motor operating approaches for different user sensations. Kasai further discloses circuitry involving a microcomputer to generate these pulsed signals based on user input for desired frequency and duty ratio. A copy of the Kasai is attached Exhibit D.

48.    U.S. Patent No. 7,147,468 B2, entitled "HAND HELD ORAL IRRIGATOR" to Snyder et al. ("Snyder"), by itself or in combination with other prior art, anticipates and/or renders obvious one or more claims of the '677 Patent. Snyder was filed on Dec. 30, 2003. Snyder discloses a hand-held oral irrigator featuring a motor, a pump (e.g., piston pump), and user controls. Snyder discloses a control structure that permits a user to select low or high motor speed by "correspondingly altering the voltage level applied to the motor." Snyder also explicitly discusses that the "pulsation frequency" of the fluid output can be a function of the mechanical design of the pump (e.g., the offset of an eccentric shaft driving the piston) in conjunction with the motor speed (which is varied by voltage level). This teaches user-selectable operational levels in an oral irrigator achieved by altering motor voltage, and acknowledges inherent fluid pulsation whose

13

frequency is linked to mechanical design and operational speed. A copy of the Snyder is attached Exhibit E.

49.    Chinese Utility Model CN 201171723 Y, entitled "MULTIFUNCTIONAL ORAL IRRIGATOR" to Cao ("Cao"), by itself or in combination with other prior art, anticipates and/or renders obvious one or more claims of the '677 Patent. Cao was filed on November 16, 2007, and published on December 31, 2008. Cao discloses a multifunctional oral irrigator comprising a motor and a piston pump driven by the motor via a gear and crankshaft mechanism, designed to generate "high-pressure pulsed water flow" for cleaning teeth. Cao further discloses a "water controller", which can be adjusted by a push handle, to regulate the size of the water flow. This teaches an oral irrigator that inherently produces pulsed water output and includes a mechanism for user-controlled adjustment of the fluid flow. A copy of the Cao is attached Exhibit F.

50.    Chinese Utility Model CN 202168974 U, entitled "PORTABLE MEDICAL HIGH-PRESSURE PULSE DEBRIDEMENT INSTRUMENT" to Liang ("Liang"), by itself or in combination with other prior art, anticipates and/or renders obvious one or more claims of the '677 Patent. Liang was filed on July 28, 2011, and published on March 21, 2012. Liang discloses a portable medical instrument for wound debridement that utilizes "high-pressure pulse sterile water." The device comprises a pulse spray gun and a high-pressure diaphragm water pump connected to either an AC-DC transformer or a DC power source like a battery. This teaches a device employing a pump (specifically a diaphragm pump) to generate and deliver a pulsed fluid output for cleaning or treatment purposes, and highlights DC power operation. A copy of the Liang is attached Exhibit G.

51.    Among the other basis, the claims of the '630 Patent are rendered obvious and/or anticipated by prior arts as listed above pursuant to the 35 U.S.C. §§ 102 and/or 103.

52.    Defendant baseless alleged to Amazon that Plaintiffs' Water Dental Flosser infringe the '677 Patent, has resulted in imminent and real threat of an infringement lawsuit.

53.    In the view of the foregoing, Plaintiffs are entitled to a declaratory judgment that the '677 Patent is invalid under one or more provisions of 35 U.S.C. §§ 102, 103 and/or 112.

### COUNT III
**(Tortious Interference with Existing Business Relationships)**

54.    Plaintiffs incorporate by reference the allegations set forth above in this Complaint as if fully set forth herein.

55.    Defendant's actions, as described herein, including baseless infringement claim to Amazon that Plaintiffs' Water Dental Flosser infringe upon its invalid '677 Patent has harmed Plaintiffs' selling relationship with Amazon by (a) effectively causing the imminent removal from Amazon of Plaintiffs' listings, and (b) putting Plaintiffs at risk of their Amazon stores being permanently closed as a result of legally false infringement complaints, and (c) hindering the continued sale and positive review of the Plaintiffs' Water Dental Flosser by Amazon customers.

56.    Defendant intended to harm and has irreparably harmed Plaintiffs' reputation with Amazon by making these false statements to Amazon.

57.    Plaintiffs would lose valuable selling opportunities as a direct and proximate suffer, severe irreparable harm from which there is no adequate remedy at law.

58.    Plaintiffs are entitled to the imposition of a preliminary and permanent injunction against the Defendant, to restrain and enjoin it and its agents from further tortiously interfering with the Plaintiffs' business relationship with Amazon.

59.    By reason of the foregoing, Plaintiffs are entitled to an award of damages from Defendant in an amount to be determined at trial.

60.    Defendant's aforesaid acts are of such wanton, willful and malicious nature, that Plaintiffs are entitled to an award of punitive damages in an amount to be determined at trial, in order to punish the Defendant and deter others similarly situated from committing such acts in the future.

61.    By reason of the foregoing, Plaintiffs are suffering and will continue to suffer irreparable harm, unless and until the Court directs the Defendant to withdraw its complaint to Amazon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1)    For judgment in favor of Plaintiffs against Defendant on all claims;

2)    Declaring that Plaintiffs' Water Dental Flosser do not infringe the Defendant's U.S. Patent No. 9,642,677;

3)    Declaring that U.S. Patent No. 9,642,677 is invalid for failing to satisfy the criteria of 35 U.S.C. § 102 and/or § 103, in light of the newly cited prior arts;

4)    Judgment that this case is exceptional and that the Defendant be ordered to pay all Plaintiffs' costs and attorneys' fees associated with this action pursuant to 35 U.S.C. § 285;

5)    Order by this Court that Defendant must immediately withdraw any reports of infringement of the U.S. Patent No. 9,642,677 made to Amazon against Plaintiffs;

6)    Enjoining Defendant temporarily, preliminarily, and permanently from making any future complaint regarding U.S. Patent No. 9,642,677 against Plaintiffs and Plaintiffs' Water Dental Flosser;

7)    Ordering Defendant to return to the Court with proof of compliance with this Order within seven (7) days of entry thereof, with a copy served on Plaintiffs' attorney;

16

8)      Awarding Plaintiffs damages due to Defendant's improper acts, doubled and/or trebled due to the willful and exceptional nature of the case;

9)      Awarding Plaintiffs compensatory, general and special, consequential and incidental damages in an amount to be determined at trial;

10)      Awarding Plaintiffs exemplary, punitive, statutory, and enhanced damages.

11)      Awarding pre- and post- judgment interest; and

12)      Awarding Plaintiffs such other and further relief as this Court deems is just and proper.

### JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

Date: May 10, 2025          /s/ Wei Wang

Wei Wang, Esq.
GLACIER LAW LLP
41 Madison Avenue, Suite 2529
New York, NY, 10010
wei.wang@glacier.law
(212) 729-5073

Tao Liu, Esq.
GLACIER LAW LLP
41 Madison Avenue, Suite 2529
New York, NY 10010
Tao.liu@glacier.law

***Attorneys for Plaintiffs***